IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| ALEJANDRO R. DUARTE,<br><br>Petitioner,<br><br>vs.<br><br>SARPY COUNTY ADULT PROBATION OFC,<br><br>Respondent. | **8:22CV393**<br><br>**MEMORANDUM AND ORDER** |

This matter is before the Court on Petitioner Alejandro R. Duarte's ("Duarte" or "Petitioner") Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254. Filing No. 1. Respondent answered and filed the relevant state court records. Filing No. 10. Petitioner retained counsel, and the parties have fully briefed the case. For the reasons that follow, the Court will deny the relief requested in the petition and dismiss this matter with prejudice.

## I. RELEVANT PROCEDURAL AND FACTUAL BACKGROUND

### A. Conviction and Sentence

The Court recites the following relevant facts from the Nebraska Court of Appeals' direct appeal opinion, Filing No. 10-2. *See Bucklew v. Luebbers*, 436 F.3d 1010, 1013 (8th Cir. 2006) (utilizing state court's recitation of facts on review of federal habeas petition).

> On January 9, 2020, the State filed a criminal complaint charging Duarte with two offenses: driving under the influence, second offense, a Class W misdemeanor, and making an improper turn, a traffic infraction. On March 6, Duarte filed a motion to suppress any evidence related to the stop of his vehicle

by law enforcement. Specifically, Duarte alleged that the police officer who stopped his vehicle could not effectuate the traffic stop because the police officer was outside of his primary jurisdiction and had no probable cause to stop Duarte, all contrary to Duarte's rights under the constitutions of both the United States and Nebraska.

On June 11, 2020, the county court held a hearing on Duarte's motion to suppress. At the hearing, the State called Officer Brian Malone, a police officer with the city of Papillion, Nebraska, to testify.

Malone testified that on December 28, 2019, he conducted a traffic stop of Duarte's vehicle after observing the driver of the vehicle conduct an improper right-hand turn while within Papillion city limits. Specifically, Malone explained that he observed Duarte's vehicle turn right out of a restaurant parking lot eastbound onto Giles Road. The vehicle turned directly into the left lane of Giles Road, failing to remain in the lane nearest the curb. Malone testified that he observed the vehicle to move into the left turn lane in order to turn north onto 72d Street. In Malone's estimation, there was 100 to 200 feet between the point where Duarte entered Giles Road and the intersection of 72d and Giles.

Malone testified that after observing the vehicle make the right turn and the subsequent left turn onto 72d Street, he began following the vehicle north. He acknowledged that once the vehicle was proceeding north out of the intersection the vehicle was in La Vista, Nebraska. As a result, when he was following the vehicle, he was no longer in Papillion, but was in La Vista. Malone continued to follow the vehicle for approximately 1 minute or ½ mile. While following the vehicle,

Malone observed the driver of the vehicle drive in excess of the speed limit and change lanes without first signaling. Malone explained that in his initial report he did not note that he observed Duarte to be driving in excess of the posted speed limit once he turned north on 72d Street. He further explained that his knowledge of the vehicle's speed was based upon his vehicle maintaining the speed limit and Duarte's vehicle "pulling away" from him. As a result of his observations, Malone conducted a traffic stop of the vehicle. Malone acknowledged that the traffic stop ultimately occurred in the city of La Vista, Nebraska. The La Vista Police Department has primary jurisdiction in the city of La Vista. Malone was an officer employed by the Papillion Police Department. After identifying Duarte, Malone detected the odor of alcohol "emitting from the vehicle" and conducted an investigation to determine whether Duarte was driving under the influence. Subsequent to that investigation, Duarte was arrested for driving under the influence.

On October 5, 2020, the county court denied Duarte's motion to suppress. In its order, the county court explained that Malone observed Duarte to make an improper right-hand turn in violation of Neb. Rev. Stat. § 60-6,159 (Reissue 2010). The court also noted that Malone later observed Duarte make an improper lane change by changing lanes without signaling. The county court further explained that Malone followed Duarte north beyond his primary jurisdiction into the adjacent city of La Vista, where he observed Duarte driving in excess of the posted speed limit. The county court found that based upon the traffic violations, the officer had probable cause to stop Duarte's vehicle and that the stop was lawful. The county

court found that the traffic stop was also lawful pursuant to Neb. Rev. Stat. § 29-215(2)(b) (Reissue 2016) because the officer had been in fresh pursuit of Duarte for less than 1 minute and was only about ½ mile into La Vista after observing Duarte make his illegal right-hand turn in Papillion. The court noted that pursuant to § 29-215(2)(b), an officer may, in a fresh pursuit apprehend a person suspected of committing a misdemeanor or traffic violation, anywhere within 25 miles of the officer's primary jurisdiction and there arrest and detain.

A bench trial was held on January 21, 2021. At the start of trial, Duarte renewed his objection to the evidence related to the motion to suppress. The court again overruled the evidentiary objection. Our record does not include any testimony that was adduced at trial. However, exhibits received at trial included the footage from Malone's body camera and is included in our record. At the sentencing hearing, there is an indication that Duarte made an oral motion for a directed verdict, which was taken under advisement. Duarte was ultimately found guilty of both charges by the county court on February 18, 2021.

Sentencing was held on February 25, 2021. The county court sentenced Duarte to a term of probation of 18 months and imposed a fine of $500 on the second-offense DUI charge. In addition, the county court ordered Duarte's driver's license to be revoked for 18 months. He was sentenced to a $25 fine for making the improper turn.

Filing No. 10-2 at 3–4.

**B. Direct Appeal**

Duarte filed a timely appeal of his convictions and sentences to the state district court. Filing No. 10-8 at 53. The Nebraska Court of Appeals summarized Duarte's intermediate appellate proceedings as follows:

> In his statement of errors, Duarte asserted that the county court erred in overruling his motion to suppress because there was not probable cause for Malone to initiate the traffic stop and because Malone was not within his primary jurisdiction when he stopped Duarte's vehicle. Duarte also asserted that the county court erred when it found that Malone could conduct a legal traffic stop outside of his primary jurisdiction because there was no certified copy of an interlocal agreement admitted into evidence. Finally, Duarte asserted that because the evidence from the traffic stop should have been excluded, there was insufficient evidence to support his convictions.
>
> On July 7, 2021, the district court entered an order affirming the decision of the county court. The district court agreed with the county court that Malone had probable cause to initiate a traffic stop. The district court found that it was "unquestioned" that Malone observed Duarte commit a traffic violation in Papillion and then followed Duarte and effectuated a traffic stop. It found that Malone's actions were justified under § 29-215(2)(b) because the distance between the location of the infraction and traffic stop was less than 25 miles. The district court noted that Malone testified regarding the geographic locations of the cities, the streets he traveled, the direction he proceeded, and the time elapsed, which provided circumstantial evidence of the boundaries of the cities.

Filing No. 10-2 at 4.

Duarte then timely appealed his convictions and sentences to the Nebraska Court of Appeals. Filing No. 10-1. Duarte essentially raised the same arguments that he made in the state district court, asserting Malone lacked probable cause and jurisdiction for the traffic stop and the evidence was insufficient to support his convictions because the evidence obtained from the traffic stop should have been suppressed. Filing No. 10-2 at 4; Filing No. 10-3 at 10–13.

On March 29, 2022, the Nebraska Court of Appeals affirmed the state district court's judgment in a Memorandum Web Opinion. Filing No. 10-2. Duarte filed a petition for further review in which he asserted the Nebraska Court of Appeals erred in affirming the lower court's ruling that Malone had probable cause to stop Duarte's vehicle and that Malone was authorized to conduct the stop outside his primary jurisdiction. Filing No. 10-5. The Nebraska Supreme Court denied Duarte's petition for further review on June 13, 2022. Filing No. 10-1 at 4.

Duarte did not move for postconviction relief in the state courts. *See* Filing No. 1 at 3, 6.

**C. Habeas Petition**

Duarte filed his habeas petition in this Court on November 14, 2022. Filing No. 1. Duarte's habeas claims were summarized by this Court in its preliminary review of the petition as follows:

Claim One: Petitioner's conviction was obtained due to an unconstitutional traffic stop.

Claim Two: The evidence was insufficient to support Petitioner's conviction.

Filing No. 4.

Respondent filed an answer, Filing No. 11, a supporting brief, Filing No. 12, and the relevant state court records, Filing No. 10. Duarte filed his brief in response, Filing No. 18, and a copy of the video included in Exhibit 1 of the state court bill of exceptions, *see* Filing No. 18 at 3 n.1; *see also* Filing No. 10 at 2 n.1; Filing No. 10-9 at 13, 48. Respondent filed a reply brief, Filing No. 19, and this matter is ripe for disposition.

## II. DISCUSSION

Respondent argues that the petition should be denied because Claim One is not a cognizable federal habeas claim and Claim Two is procedurally defaulted. Upon consideration of the parties' arguments and the record, the Court agrees.

### A. Claim One

In Claim One, Duarte alleges his conviction was the result of an unconstitutional traffic stop because the officer lacked probable cause and jurisdiction to conduct the stop. Filing No. 1 at 5. Duarte's claim alleges a Fourth Amendment violation, which Respondent submits is not cognizable in federal habeas under the rule announced in *Stone v. Powell*, 428 U.S. 465 (1976). "[W]here the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas relief on the ground that evidence obtained in an unconstitutional search and seizure was introduced at his trial." *Stone*, 428 U.S. at 494. In practice, this means that "Fourth Amendment claims asserted by state prisoners in federal habeas petitions are to

be treated differently from other constitutional claims." *Willett v. Lockhart*, 37 F.3d 1265, 1273 (8th Cir. 1994).

In *Willett*, the Eighth Circuit adopted a two-part test for Fourth Amendment habeas claims:

> [A] Fourth Amendment claim is *Stone*-barred, and thus unreviewable by a federal habeas court, unless either the state provided no procedure by which the prisoner could raise his Fourth Amendment claim, or the prisoner was foreclosed from using that procedure because of an unconscionable breakdown in the system.

*Id*. The first part of the test announced in *Willett* is "simple enough—either the state has a system available for raising Fourth Amendment claims or it does not." *Id*. at 1272. Further, because the opinion in *Stone* was "intended to short-circuit the district court's review of the record," *id*. at 1271, part two of the test "does not require a probing review of the state court record, either of the factual findings pertaining to the petitioner's search-and-seizure claims or of the application of Fourth Amendment principles to those facts," *id*. at 1272. A "mere disagreement with the outcome of a state court ruling is not the equivalent of an unconscionable breakdown in the state's corrective process" under *Willett*. *Chavez v. Weber*, 497 F.3d 796, 802 (8th Cir. 2007) (internal quotation omitted).

As applied here, Duarte does not dispute that the Nebraska state court system provided a procedure by which he could raise his Fourth Amendment claim, Filing No. 18 at 1, and the record shows this procedure allowed Duarte to raise his Fourth Amendment claims in a pre-trial motion to suppress, Filing No. 10-8 at 7; Filing No. 10-9 at 18–33, and to challenge the county court's denial of that motion on direct appeal to both the state district court, Filing No. 10-7 at 2; Filing No. 10-9 at 5–11, and the state appellate courts, Filing No. 10-3 at 5–6; Filing No. 10-5. Thus, part one of the *Willett* test is satisfied.

Duarte, instead, argues the available procedure for raising his Fourth Amendment claims "failed him based upon the limitations placed on said review." Filing No. 18 at 1. Specifically, Duarte argues the county court failed to properly consider the video evidence contained in Exhibit 1 of the bill of exceptions, which he contends refutes Officer Malone's testimony about the observations he was able to make of Duarte's vehicle and shows that Officer Malone lacked probable cause to initiate a pursuit outside of his jurisdiction to effectuate a traffic stop. Because the Nebraska appellate process does not allow a criminal defendant to litigate or challenge credibility of a witness, Duarte contends he was denied a fair and full opportunity to litigate his Fourth Amendment Claim. *See Id*. at 9–10.

Despite his arguments to the contrary, Duarte has failed to demonstrate that there was an "unconscionable breakdown" in Nebraska's process or that he was prevented from raising his Fourth Amendment claim. Duarte essentially takes issue with the county court's factual findings and the appellate courts' review of those findings, but *Stone* and Eighth Circuit precedent prevents this Court from reviewing the Nebraska courts' factual and legal findings. *See Chavez*, 497 F.3d at 802 ("Our inquiry focuses on whether [petitioner] received an opportunity for full and fair litigation of his claim, not on whether legal or factual error in fact occurred.").

Moreover, nothing in the record indicates Duarte was prevented from challenging the lower court's findings on the motion to suppress on appeal. Indeed, Duarte argued to the Nebraska Court of Appeals that Malone did not have probable cause to initiate the traffic stop because, even though "Duarte concede[d] that his right-hand turn was not made to the lane that was next to the right-hand curb or edge of the roadway[,] . . . it was

not practicable for him to turn into that lane because he needed to turn left soon after the right-hand turn." Filing No. 10-2 at 5. The Nebraska Court of Appeals considered and rejected Duarte's argument, finding:

> It is clear that Malone possessed facts from which it was reasonable to believe Duarte committed a traffic violation, and the county court properly denied Duarte's motion to suppress. Duarte concedes that he turned into the incorrect lane; however, he asserts that it was impracticable given the nature of his travel plan. Duarte's argument is without merit. Malone did not need to make an assessment of the practicability of the turn prior to initiating the traffic stop. Rather, the State needed only show that a reasonably cautious person would believe that Duarte committed the offense. Malone's observation of Duarte turning into the incorrect lane was sufficient for this belief. Accordingly, we affirm the decision of the district court affirming the decision of the county court finding that Malone had probable cause to stop Duarte.

*Id*. at 5–6. Thus, the record demonstrates that Petitioner was able to raise his Fourth Amendment claims and there is no evidence of an "unconscionable breakdown" in the system. Accordingly, Claim One is dismissed.

**B. Claim Two**

In Claim Two, Duarte challenges the sufficiency of the evidence to support his convictions and argues the "State did not prove its case beyond a reasonable doubt" because the evidence from the traffic stop should have been excluded. Filing No. 1 at 5. As Respondent contends, Duarte failed to present this claim through one complete round of Nebraska's appellate review process, and Claim Two is procedurally defaulted.

As set forth in 28 U.S.C. § 2254:

> (b)(1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that—
>
> (A) the applicant has exhausted the remedies available in the courts of the State; or

> (B) (i) there is an absence of available State corrective process; or
>
> (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1).

The United States Supreme Court has explained the habeas exhaustion requirement as follows:

> Because the exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts . . . state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process.

*O'Sullivan v. Boerckel*, 526 U.S. 838, 844 (1999).

A state prisoner must therefore present the substance of each federal constitutional claim to the state courts before seeking federal habeas corpus relief. In Nebraska, "one complete round" ordinarily means that each § 2254 claim is presented to the trial court, and then on appeal to either the Nebraska Supreme Court directly[1] or to the Nebraska Court of Appeals, and then in a petition for further review to the Nebraska Supreme Court if the Court of Appeals rules against the petitioner. *See Akins v. Kenney*, 410 F.3d 451, 454-55 (8th Cir. 2005).

Where "no state court remedy is available for the unexhausted claim—that is, if resort to the state courts would be futile—then the exhaustion requirement in § 2254(b) is satisfied, but the failure to exhaust 'provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas corpus review

[1] The Court notes that in some situations, such as where a life sentence has been imposed in a criminal case, the appeal goes directly to the Nebraska Supreme Court. Neb. Rev. Stat. § 24-1106.

of the defaulted claim, unless the petitioner can demonstrate cause and prejudice for the default.'" *Armstrong v. Iowa*, 418 F.3d 924, 926 (8th Cir. 2005) (quoting *Gray v. Netherland*, 518 U.S. 152, 162 (1996)). Stated another way, if a claim has not been presented to the Nebraska appellate courts and is now barred from presentation, the claim is procedurally defaulted, not unexhausted. *Akins*, 410 F.3d at 456 n.1.

In addition, "[t]he Nebraska Postconviction Act, Neb. Rev. Stat. § 29-3001 *et seq*. (Reissue [2016 & Cum. Supp. 2024]), is available to a defendant to show that his or her conviction was obtained in violation of his or her constitutional rights," but "the need for finality in the criminal process requires that a defendant bring all claims for relief at the first opportunity." *State v. Sims*, 761 N.W.2d 527, 533 (Neb. 2009). Thus, "[a] motion for postconviction relief cannot be used to secure review of issues which were or could have been litigated on direct appeal." *Hall v. State*, 646 N.W.2d 572, 579 (Neb. 2002). *See also State v. Thorpe*, 858 N.W.2d 880, 887 (Neb. 2015) ("A motion for postconviction relief cannot be used to secure review of issues which were or could have been litigated on direct appeal, no matter how those issues may be phrased or rephrased."). Furthermore, in 2011, the Nebraska Legislature created a one–year time limit for filing a verified motion for postconviction relief. *See* Neb. Rev. Stat. § 29–3001(4); *State v. Smith*, 834 N.W.2d 799, 801 (Neb. 2013).

Here, the record clearly shows, and Duarte does not dispute, *see* Filing No. 18, that Claim Two is procedurally defaulted. Duarte presented his sufficiency-of-the-evidence claim in his brief to the Nebraska Court of Appeals, Filing No. 10-3 at 6, 12–13, but he failed to raise this claim in his petition for further review to the Nebraska Supreme Court, Filing No. 10-5. Duarte cannot raise this claim in a motion for postconviction relief

because the issue was or could have been raised on direct appeal and any postconviction motion filed now would be untimely.

A federal habeas court may not review a state prisoner's procedurally defaulted federal claims "unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). Here, Duarte has not shown, let alone argued, that any cause and prejudice exists to excuse the procedural default of Claim Two, and the Court's independent review of the record reveals none. The Court also concludes that the miscarriage of justice exception does not apply to excuse the default of Duarte's habeas claim as he has not made any "showing, based on new evidence, that 'a constitutional violation has probably resulted in the conviction of one who is actually innocent.'" *Brownlow v. Groose*, 66 F.3d 997, 999 (8th Cir. 1995) (quoting *Schlup v. Delo*, 513 U.S. 298, 327 (1995)). Accordingly, Claim Two must be dismissed with prejudice. *Armstrong*, 418 F.3d at 926–27 (dismissal with prejudice is appropriate where the ground for dismissal is procedural default).

## III. CERTIFICATE OF APPEALABILITY

Finally, "a state prisoner seeking a writ of habeas corpus" under § 2254 cannot appeal the denial of his petition without first obtaining a certificate of appealability. *Miller-El v. Cockrell*, 537 U.S. 322, 335 (2003) (citing 28 U.S.C. § 2253); Fed. R. App. P. 22(b). This Court cannot grant such a certificate unless Duarte "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To do that, Duarte "must demonstrate that reasonable jurists would find [this] [C]ourt's assessment of the

constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Duarte has not made that showing, and this Court will not issue a certificate of appealability.

IT IS THEREFORE ORDERED that:

1. Duarte's petition, Filing No. 1, is denied and dismissed with prejudice.
2. The Court will not issue a certificate of appealability in this matter.
3. The Court will enter a separate judgment.

Dated this 25th day of November, 2026.

BY THE COURT:

Joseph F. Bataillon
Senior United States District Judge